# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 29, 2012 Session

## STATE OF TENNESSEE v. TONYA THOMAS

### Appeal from the Criminal Court for Knox County
### No. 91472B    Mary Beth Leibowitz, Judge

---

### No.  E2011-01590-CCA-R3-CD - Filed August 16, 2012

---

The Knox County Grand Jury indicted Appellant, Tonya Thomas, for one count of aggravated assault.  The trial court found Appellant guilty of a lesser included offense of simple assault.  Appellant was sentenced to eleven months and twenty-nine days of probation.  On appeal, Appellant challenges the sufficiency of the evidence for her conviction for simple assault.  We have thoroughly reviewed the record on appeal and have concluded that the evidence presented is sufficient to support the conviction.  For these reasons, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROGER A. PAGE, JJ., joined.

Keith Lowe, Knoxville, Tennessee, for the appellant, Tonya Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Randall E. Nichols, District Attorney General, and Patti Cristil, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On June 27, 2008, the victim, Jeffrey Scott Poe, II, was driving to Food City in Knox County to purchase some gasoline.  He was stalled by a red light and approached by Appellant's brother, who stepped out from a car occupied by Appellant and her mother. According to Appellant, the victim almost hit their vehicle in passing.  Appellant's brother yelled and cursed Poe about his driving.

After the initial confrontation between the victim and Appellant's brother, Appellant and her family pulled into the parking lot of a Food City grocery store. The victim also drove into Food City, where he exited his vehicle in an attempt to inquire as to why Appellant and her family were so angry. Poe did not know Appellant, her brother, or her mother.

In response, Appellant's brother stepped outside his family's vehicle and walked towards the victim who stood beside his car. Appellant's brother said the victim almost hit their car and he was going to "kick [the victim's] ass." Appellant's brother then accused the victim of following his family into the parking lot. Appellant accompanied her brother. Because Appellant did not want her brother to get in trouble and go to jail, she restrained him from charging the victim. Shortly thereafter, she let go of her brother. According to the victim, Appellant was holding a knife and threatened to "cut" the victim if he tried to hurt her brother.

Appellant admitted that she threatened to hit the victim because she thought the victim was going to attack her brother. Appellant claimed she did not have a knife but admitted her brother carried something like a knife because it opened up like one. However, the end of her brother's device was shaped like a box cutter. The victim told police authorities that Appellant brandished a knife and threatened to cut him. The blade of the knife was almost three inches in length. This occurred while Appellant stood within arm's reach of the victim. Once he recognized Appellant had a weapon, the victim left Food City because he was frightened.

Appellant's mother testified that when the victim left the scene in his car, he drove extremely close to her as she entered the family's vehicle. Appellant's brother was sitting inside the car at the time. Appellant's brother ran after the victim. Appellant and her mother remained in the parking lot.

The victim then saw Appellant's brother approaching his car through his rearview mirror. The victim decided to step outside of his vehicle because he felt like a "sitting duck." However, despite repositioning himself, Appellant's brother slashed his neck with a knife. The victim called 911.

Nick Beeler, a witness, was near the intersection and Food City. He was close enough to see the victim's bloody neck. The victim was on the phone. Mr. Beeler was scared because the victim was covered with more blood than he had ever seen.

After police officers arrived on the scene, Appellant's mother gave them consent to search her vehicle. Officers seized a knife from inside the vehicle. Appellant claimed that

the knife discovered by the officers belonged to her brother, but Appellant's brother never came back to the family's vehicle after he slashed the victim's neck. Officers did not search Appellant's person or her mother during that time. Officers also could not recall if they searched Appellant's purse. Although the knife allegedly used by Appellant was not discovered, evidence suggested that two knives were present on the scene.

The victim told officers on the scene that Appellant held a knife in her hand when she exited her family's car. Detective Dale Danzler, who investigated the crime, identified the weapon used to cut the victim's neck. He said, based on experience, the weapon used was one like a sharp-bladed knife. He also stated that Appellant told the victim to get out of the parking lot, and if he hurt her brother, she would cut him.

In her testimony, Appellant told the court her theory about the victim's injury, that the victim brought his injuries on himself. She said that if the victim had listened, then none of the parties would be in their current position.

Appellant was indicted by the Knox County Grand Jury in April of 2009 for one count of aggravated assault. The above evidence was presented at a bench trial on June 24, 2011. At the conclusion of the trial, Appellant was found guilty of the lesser-included offense of simple assault. She was sentenced to eleven months and twenty-nine days of probation. Appellant filed a timely notice of appeal.

*ANALYSIS*
*Sufficiency of the Evidence*

On appeal, Appellant argues that the evidence is insufficient to sustain her conviction. The State disagrees.

To begin our analysis, we note that when a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally deemed with a presumption of innocence, the verdict of guilty removes this presumption and replaces it with one of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id*.

The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence. *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 599, 561 (Tenn. 1990).

The guilt of a defendant, including any fact required to be proved, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Even though convictions may be established by different forms of evidence, the standard of review for the sufficiency of that evidence is the same whether the conviction is based upon direct or circumstantial evidence. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). As such, all reasonable inferences from evidence are to be drawn in favor of the State. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *See Tuggle*, 639 S.W.2d at 914.

Appellant herein was convicted of simple assault. A person commits the offense of simple assault in accordance with Tennessee Code Annotated section 39-13-101(a)(2) when he "intentionally or knowingly causes another to reasonably fear imminent bodily injury."

Appellant argues on appeal about specific aspects of the evidence at trial. Specifically, Appellant admits that she threatened the victim with physical contact when and if he caused any harm to her brother. Additionally, Appellant stated that she did not want her brother in trouble and back in jail. Because she was not trying to rob or commit another crime, Appellant argues that her conditional threat was, therefore, not illegal. This argument was presented by Appellant at trial during the discussion on the motion for acquittal. This argument resolves itself into an argument about defense of a third person under Tennessee Code Annotated section 39-11-612, which provides:

> A person is justified in threatening or using force against another to protect a third person, if:

(1) Under the circumstances as the person reasonably believes them to be, the person would be justified under § 39-11-611 in threatening or using force to protect against the use or attempted use of unlawful force reasonably believed to be threatening the third person sought to be protected; and

(2) The person reasonably believes that the intervention is immediately necessary to protect the third person.

The transcript reveals that the trial judge, as the trier of fact and law in this case, considered Appellant's argument and concluded that, based on the evidence, Appellant's threats of force were not justified to protect her brother. We agree. There was ample evidence to support that the victim was not presenting a threat to Appellant or her brother and that he never actually advanced toward Appellant, her brother, or her mother in an aggressive manner. Instead, Appellant acted as the aggressor, who caused the victim to reasonably fear bodily injury, when she stood within arm's length of the victim and proceeded to threaten him with either a knife or her fist.[1] The victim testified that he left the Food City parking lot because Appellant's knife, which had either a two or three inch blade, caused him to be scared for his life. Again, Appellant does not dispute that she threatened the victim with physical contact. Instead, she argues that her threat was conditional and not imminent. Appellant introduced no proof to contradict the State's evidence. This theory was rejected by the trier of fact.

## CONCLUSION

For the forgoing reasons, we conclude that the evidence presented at trial is sufficient for a rational trier of fact to determine that Appellant caused the victim to reasonably fear bodily harm. Accordingly, a rational trier of fact could determine that Appellant committed simple assault. The judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

---

[1]The trial court noted that "[t]he weight of the evidence is kind of half and half . . . about the knife, whether [Appellant] had the knife" but there was "no question in the proof that [Appellant] intentionally or knowingly caused [the victim] to reasonably fear serious bodily injury."

-5-